**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES** | * |
| | * |
| v. | *   **Crim. Case No.:  SAG-05-61** |
| | * |
| **NAKIE HARRIS,** | * |
| | * |
| **Defendant.** | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In December, 2005, a jury convicted Defendant Nakie Harris, and two of his co-defendants, of six charges related to witness tampering and firebombing the home of a witness in an attempt to kill her.  United States District Judge J. Frederick Motz imposed a total sentence of 720 months of incarceration for Harris, to be followed by a period of three (3) years of supervised release.  ECF 184.  On January 7, 2021, Harris filed a pro se Motion for Compassionate Release.  ECF 553.  The Federal Public Defender declined to enter an appearance but provided evidence of Harris's exhaustion of his administrative remedies.[1]  ECF 560.  Harris later supplemented his motion with additional records, ECF 561, the Government filed an opposition, ECF 564, and Harris submitted some additional filings.  ECF 566, 567.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, Harris's Motion will be denied.

**I.   LEGAL STANDARDS**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction."  *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L.

---

[1] While Harris expresses confusion about how the Federal Public Defender's office had a copy of his motion before it was docketed, ECF 556, his own correspondence evidences that he sent a copy of his motion to an attorney in that office.  ECF 551, 552.

No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

## II.   ANALYSIS

Harris adequately exhausted his administrative remedies. *See* ECF 560-1. Thus, this Court turns to whether he has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's

minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)-(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."]. This Court has authority to consider any "extraordinary and compelling reason" a defendant might raise, regardless of the BOP's determinations. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act. *E.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2. In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act. *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, to qualify for compassionate release, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons

3

for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

Harris's medical records demonstrate that he has a body mass index (BMI) of 31.4. A BMI over 30 is an indicator of obesity, which is a condition presently identified by the Centers for Disease Control & Prevention ("CDC") as one that can increase a person's risk of COVID-19 complications. *See People Who Are at Increased Risk for Severe Illness: People with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://tinyurl.com/y9chuzkm (last visited April 13, 2021) [hereinafter "CDC Underlying Condition Risk Factors"]. However, Harris, who is in his mid-forties and is otherwise healthy, has also received both doses of the Pfizer vaccine. As best we know today, the Pfizer and Moderna vaccines dramatically reduce most recipients' risk of severe complications or death from COVID-19 infection, even as to many of the more prevalent variants and even for recipients with increased risk of COVID-19 complications.

This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an

inmate's medical conditions constitute the "extraordinary and compelling reason" required to further consider compassionate release. *See, e.g.*, *United States v. Gomez-Vega,* Cr. No. 19-1382-001 KG, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021) ("[A]bsent any evidence or argument combatting the efficacy of the vaccine's protection to mitigate his medical concerns, the Court is strained to accept that Mr. Gomez-Vega's conditions constitute extraordinary and compelling reasons for compassionate release."); *United States v. Leach*, Cr. No. 3:14-cr-229-MOC-DCK-10, 2021 WL 1318318, at *3 (W.D.N.C. Apr. 8, 2021) ("Defendant therefore can demonstrate an extraordinary and compelling reason as required by § 3582(c)(1)(A)(i), but the facts that support it are likely to soon change once she is vaccinated."); *United States v. Mendoza*, Cr. No. 06-167, 2021 WL 1312920, at *8 (W. D. Pa. April 8, 2021) ("While there are certainly still unknowns about the vaccine administered to Mendoza, it appears that Mendoza's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination and his initial bout with COVID-19 in May 2020."); *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated the inmate's risk such that COVID-19, despite the inmate's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus. On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity from the category of risk constituting an "extraordinary and compelling reason" to consider compassionate release.

5

Moreover, the facility at which Harris is presently incarcerated, FCI Talladega, has only one inmate currently testing positive for the COVID-19 virus, likely because of widespread inoculation. *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited April 14, 2021).

Harris correctly notes that, according to *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020), the Court is permitted to consider any proposed "extraordinary and compelling reason" a defendant offers in the compassionate release setting. However, his case is distinguishable from the defendants discussed in *McCoy,* because his sentence did not involve the stacking of sentences pursuant to 18 U.S.C. § 924(c). Instead, the length of his sentence results from his six counts of conviction, relating to his active participation in an extremely serious violent crime that involved attempted murder via a particularly vicious and destructive means. No intervening change in the law, such as the elimination of § 924(c) stacking, would cause Harris to receive a necessarily shorter sentence. While he posits that he would receive a less significant sentence today due to overall changes in sentencing practices, he offers no comparable cases in which defendants received a lesser sentence, perhaps because there are few cases involving the firebombing of a witness's home. The only other case he discusses, *United States v. Harris*, No. CR ELH-02-0381-ELH, 2020 WL 7828771 (D. Md. Dec. 30, 2020), involved § 924(c) stacking and a career offender determination that would not qualify under today's standards, making it readily distinguishable from Harris's situation. Finally, Harris's two co-defendants, who were convicted at trial with him, received sentences of equal or greater length, which have not been reduced. Only co-defendants who availed themselves of plea bargains received sentences approximating the length Harris now requests, making their circumstances substantially dissimilar from Harris's own. Thus, this Court

does not conclude that Harris's sentence is disproportionate or constitutes an extraordinary and compelling reason justifying additional consideration of compassionate release.

Because Harris has failed to cite an extraordinary and compelling reason, the Court need not address the relevant § 3553(a) sentencing factors at this juncture. However, the Court recognizes and does not discount the many letters Harris has submitted from prison staff and other organizations attesting to his meaningful maturation and rehabilitation. Harris has clearly come a long way from his violent past and the Court commends his progress to date. Despite this impressive record he has amassed during his period of incarceration, the benefits he receives from his exemplary conduct in any eventual § 3553(a) analysis will have to be weighed against the disturbing nature of his underlying criminal conduct—namely, the fact that Harris and his co-defendants firebombed the home of an innocent citizen who was simply trying to rid her neighborhood of their persistent drug trafficking activity, in an attempt to kill her. That analysis, however, cannot occur until an extraordinary and compelling reason has been identified.

A separate order denying Harris's motion, ECF 553, follows.

DATED: April 16, 2021                              /s/
                                         Stephanie A. Gallagher
                                         United States District Judge