IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** | * |
| v. | * Crim. Case No.: SAG-05-61 |
| **NAKIE HARRIS,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In December, 2005, a jury convicted Defendant Nakie Harris, and two of his co-defendants, of six charges related to witness tampering and firebombing the home of a witness in an attempt to kill her. United States District Judge J. Frederick Motz imposed a total sentence of 720 months of incarceration for Harris, to be followed by a period of three (3) years of supervised release. ECF 184. On January 7, 2021, Harris filed a pro se motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (hereinafter "Motion for Compassionate Release"). ECF 553. The Federal Public Defender declined to enter an appearance but provided evidence of Harris's exhaustion of his administrative remedies. ECF 560. Harris later supplemented his motion with additional records, ECF 561, the Government filed an opposition, ECF 564, and Harris submitted some additional filings. ECF 566, 567. This Court denied Harris's motion on the grounds that he had not shown an extraordinary and compelling reason to reach the 18 U.S.C. § 3553(a) factors. ECF 568, 569. The Fourth Circuit vacated and remanded the decision, ordering this Court to consider the evidence of Harris's rehabilitation efforts in combination with the other circumstances he had presented for this Court's review. ECF 578.

On remand, this Court invited further submissions from Harris and the Government to thoroughly explore the other circumstances he has raised. ECF 581, 594. In response, Harris

submitted another thorough brief summarizing his efforts at rehabilitation, along with copies of the submissions he filed with the Fourth Circuit Court of Appeals.  ECF 583, 598.  This Court has carefully reviewed those submissions and finds again that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons that follow, Harris's Motion will again be denied.

The legal standards governing compassionate release were outlined in this Court's earlier opinion, ECF 568, and are incorporated herein by reference.  Harris adequately exhausted his administrative remedies.  *See* ECF 560-1.  Thus, this Court turns to the three-step inquiry enumerated under § 3582(c)(1)(A), beginning with whether Harris has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.  This Court has authority to consider any "extraordinary and compelling reason" for release that a defendant might raise, as well as the impact of a combination or totality of the circumstances and factors presented by a defendant.  *See United States v. McCoy,* 981 F.3d 271, 284 (4th Cir. 2020); *see also United States v. Harris*, No. 21-6781, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (unpublished).

As this Court noted in its original opinion, and as has been further highlighted by Harris's supplemental filings, Harris's evident rehabilitation (or, as he aptly describes it, his "'transform[ation]' into an 'ex-offender'") is outstanding and commendable.  *See* ECF 583-1 at 2.  Harris has had no disciplinary record in his 17 years in prison and has instead worked with prison staff on programming and ministries.  *See* ECF 583-8, 583-10 – 583-15.  Harris is the only inmate currently teaching the Victim Impact Program curriculum to other inmates, ECF 583-1, and presented the program to Congressional representatives during their tour of the facility, ECF 583-2.  Harris has submitted a long series of letters from prison staff and other organizations attesting to his meaningful maturation and rehabilitation.  *Id.*  By all accounts, Harris's display of his

changed perspective goes well beyond the simple adherence to prison rules that many defendants characterize as "rehabilitation."  Instead, Harris is actively working towards the betterment of himself, his community within the BOP, and society at large.

In no uncertain terms, this Court considers Harris's rehabilitation to be nothing short of remarkable.  Even so, the law enacted by Congress unequivocally precludes this Court from concluding that Harris's rehabilitation, in isolation, is an extraordinary and compelling reason warranting further consideration of a reduction in sentence.  *See* 28 U.S.C. 994(t) ("[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.").  Although not sufficient in itself, however, the Fourth Circuit has clarified that a defendant's "successful rehabilitation efforts can be considered as 'one among other factors' establishing extraordinary and compelling reasons for release."  *Harris*, No. 21-6781, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (quoting *McCoy*, 981 F.3d at 286 n.9).  The question then, becomes whether Harris has presented some other factor, circumstance, or combination of circumstances which, when considered in totality with his rehabilitation, amounts to an extraordinary and compelling reason.  In this Court's view, he did not.  For the reasons described below, the remaining factors raised by Harris do not independently constitute an "extraordinary and compelling reason[]" justifying further consideration of compassionate release, nor do they compound with his rehabilitation to create such a reason.

This Court considers the COVID-19 related factors presented by Harris to be of negligible, if any, import for purposes of establishing an extraordinary and compelling reason.  Harris's medical records demonstrate that he has a body mass index ("BMI") of 31.4.  ECF 598-1 at 15.  A BMI over 30 is an indicator of obesity, which is a condition presently identified by the Centers for Disease Control & Prevention ("CDC") as one that can increase a person's risk of COVID-19

3

complications. *See People Who Are at Increased Risk for Severe Illness: People with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (last visited July 21, 2022), https://tinyurl.com/y9chuzkm [hereinafter "CDC Underlying Condition Risk Factors"].  Harris also states that he has recently been diagnosed with high cholesterol, a condition that does present increased COVID-19 risk but can also be controlled with diet and medication. ECF 598-1 at 15-16.  Even so, Harris is in his mid-forties, is otherwise healthy, and has received both doses of the Pfizer vaccine.  As best we know today, although the vaccines may only modestly reduce the likelihood that its recipients will contract the virus, they dramatically reduce most recipients' risk of severe complications or death from COVID-19 infection or complications.  Consistent with that general understanding, Harris recovered fully from a bout with COVID-19 infection in late 2021/early 2022.

This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the availability of highly effective vaccines dramatically reduces the weight afforded to an inmate's medical conditions for purposes of establishing an "extraordinary and compelling reason" required to further consider compassionate release. *See, e.g.*, *United States v. Gomez-Vega,* Cr. No. 19-1382-001 KG, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021) ("[A]bsent any evidence or argument combatting the efficacy of the vaccine's protection to mitigate his medical concerns, the Court is strained to accept that Mr. Gomez-Vega's conditions constitute extraordinary and compelling reasons for compassionate release."); *United States v. Leach,* Cr. No. 3:14-cr-229-MOC-DCK-10, 2021 WL 1318318, at *3 (W.D.N.C. Apr. 8, 2021) ("Defendant therefore can demonstrate an extraordinary and compelling reason as required by § 3582(c)(1)(A)(i), but the facts that support it are likely to soon change once she is vaccinated."); *United States v. Mendoza,* Cr. No. 06-167, 2021 WL 1312920, at *8 (W. D. Pa. April 8, 2021)

4

("While there are certainly still unknowns about the vaccine administered to Mendoza, it appears that Mendoza's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination and his initial bout with COVID-19 in May 2020."); *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated the inmate's risk such that COVID-19, despite the inmate's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). This Court acknowledges that some courts continue to afford significant gravity to the risks that COVID-19 poses to vaccinated individuals when considering eligibility for compassionate release. Clearly, there can be no bright-line rule that every vaccinated individual is no longer at compellingly elevated risk, but the information available to this Court indicates that in most instances, the risk of complications are dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection. On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity and high cholesterol from the category of risks constituting an "extraordinary and compelling reason."[1] Moreover, these

---

[1] This Court is skeptical that any court would find Harris's relatively modest and ubiquitous risks of exposure to COVID-19 complications to be so severe as to justify his immediate release from prison; it would be somewhat paradoxical, then, to conclude that Harris's risk profile is extraordinary and compelling, but not urgent. Put differently, in this Court's view, COVID-19 only meaningfully contributes to an "extraordinary and compelling" reason for compassionate release where an inmate's immediate release is contemplated. Otherwise, the constantly shifting threat posed by the pandemic renders it illogical to use as a justification for releasing an inmate at some distant point in the future. By that time, the COVID-19 pandemic may or may not have ended but it inevitably will have evolved in ways beyond current contemplation. Moreover, in this Court's view, it makes little sense to find that COVID-19 risk factors contribute to a finding of "extraordinary and compelling" reasons for a sentence reduction but to merely reduce a defendant's sentence such that they have to endure those outsized risks for the remainder of their sentence. Either a defendant is subject to a heightened risk of suffering a severe case of COVID-

conditions do not contribute appreciably to Harris's effort to establish an extraordinary and compelling reason in totality.

This Court's conclusion is further bolstered by the fact that the facility at which Harris is presently incarcerated, FCI Talladega, has only five inmates and four staff members currently testing positive for the COVID-19 virus, likely because of inoculation efforts and restrictions within the facility to hinder transmission. *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS (last visited July 21, 2022), https://www.bop.gov/coronavirus/; *see also* ECF 598-3 (June, 2022 memorandum describing increased restrictions at FCI Talladega during the current COVID-19 wave). The BOP's efforts to prevent transmission within its facilities have clearly presented added hardships to the incarcerated population, as the BOP employs various restrictive measures to best protect and care for its inmates. Those conditions and risks, while unfortunate and onerous, are experienced by all incarcerated individuals, while they vary somewhat facility to facility. Thus, in this Court's view, the general increased risk of infection in an incarcerative setting and the fact that BOP facilities are more restrictive during the pandemic cannot be deemed extraordinary and compelling in any single defendant's case, absent a more particularized set of facts. Nor do they contribute any weight towards rendering other factors "extraordinary and compelling."

The final circumstance that Harris has presented to this Court is the length of his sentence: 720 months. This Court, however, does not consider the length of Harris's sentence to aid in any way in his attempt to establish an extraordinary and compelling reason. Although Harris's

---

19 such that their extreme risk outweighs the need for them to remain in a BOP facility, or they are not, in which case the need for their continued incarceration prevails over the risk they face were they to contract COVID-19. But the middle ground approach—where a court finds that medical risk factors contribute to "extraordinary and compelling" reasons for a sentence reduction, but then leaves the defendant with significant time left to serve notwithstanding those risk factors—strikes this Court as ill-advised from both a medical and legal perspective.

sentence is indisputably long, he offers no comparable cases in which similarly situated defendants received a lesser sentence—perhaps because there are few cases involving the firebombing of a witness's home. Harris's two co-defendants, who were convicted at trial with him, received sentences of equal or greater length, which have not been reduced. Only co-defendants who availed themselves of plea bargains received sentences approximating the length Harris now requests. Moreover, the only other case Harris discusses, *United States v. Harris*, Crim. No. ELH-02-0381, 2020 WL 7828771, at *12-13 (D. Md. Dec. 30, 2020), is readily distinguishable from his situation because it involved § 924(c) stacking and a career offender determination that would not qualify under today's standards. In contrast to that defendant, Harris's guidelines calculation, and the mandatory minimum consecutive sentences that added 480 months to his overall sentence, remain intact today. It cannot therefore be said that a defendant convicted of identical offenses today would receive a lower sentence. Rather, a defendant today could only receive a meaningfully different sentence from Harris if he were granted a downward variance, and there is simply no evidence to suggest that a judge would be likely to vary downward on the heinous facts of the offense presented here. Thus, this Court does not conclude that Harris's sentence is disproportionate or constitutes an extraordinary and compelling reason justifying additional consideration of compassionate release. Further, the length of his sentence does not operate in combination with his rehabilitation, or with the COVID-19 concerns discussed above, to form a collectively extraordinary and compelling reason.

    Harris's rehabilitation is indisputably admirable. In this Court's view, it is also the only circumstance that contributes meaningfully towards clearing the initial threshold to warrant further consideration of compassionate release. The remaining factors cited by Harris—namely, his risks of severe COVID-19 and the length of his sentence—are of no impact such that even considered

in totality with his remarkable rehabilitation, they do not collectively amount to an extraordinary and compelling reason. Because Harris has failed to identify an extraordinary and compelling reason, this Court need not proceed to the second phase of the inquiry at this juncture, which considers the relevant § 3553(a) sentencing factors. Of course, this Court's determination does not preclude a subsequent finding of an extraordinary and compelling reason in Harris's case, particularly should Harris continue to display the same level of rehabilitation and identify additional factors that weigh in his favor.

      A separate Order denying Harris's motion, ECF 553, follows.


Dated: July 22, 2022                                /s/
                                          _____
                                          Stephanie A. Gallagher
                                          United States District Judge