IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * Crim. Case No.: SAG-05-0061 |
| NAKIE HARRIS, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant Nakie Harris, who is serving a total sentence of 720 months in the Bureau of Prisons, has filed a self-represented motion seeking compassionate release ("Compassionate Release Motion"), ECF 667, which was later supplemented in a separate motion filed by his court-appointed counsel, ECF 696.[1] The government opposed the motion, ECF 707, and Harris filed a reply, ECF 711. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons addressed below, this Court will GRANT Harris's Compassionate Release Motion IN PART and will reduce his sentence of imprisonment in this case to a total of 300 months.

**A. Factual Background**

At Harris's trial, the government proved that the "721 Gorilla Dynasty/721 Gorilla Region," a set of the Bloods led by Harris's co-defendant Terrence Smith, trafficked crack cocaine, ecstasy, cocaine, and marijuana in the Northern District of Baltimore City. Harris was not a member of the set, but he was its principal supplier of crack cocaine.

---

[1] Also pending is a motion for leave to file medical records, ECF 669, and a series of motions to seal, ECF 695, 708, and 710, which will be granted. ECF 701 was docketed as a "supplemental motion for compassionate release" but is actually just an exhibit filed separately, so the Clerk's Office will be directed to correct the docketing.

On January 14, 2005, Terrence Smith called a Bloods meeting at his home to discuss Edna McAbier, a 57-year-old resident and community activist in the neighborhood where the set trafficked its narcotics. McAbier regularly reported drug activity to the authorities. At the meeting, the Bloods and Harris determined that McAbier needed to be killed. They discussed shooting her with a shotgun but ultimately decided to kill her by firebombing her home. Smith ordered members of the Bloods, along with Harris, to do the firebombing.

After the meeting, Harris and some of the Bloods members procured lighters, gasoline, and bottles to make Molotov cocktails. They gathered at a home across the street from McAbier's, and Harris constructed the Molotov cocktails. They also arranged for a false call to be made to 911, alleging that a rape was taking place at a location away from the area, to divert law enforcement resources.

At about 1 a.m. on January 15, 2005, McAbier was watching television and heard loud crashes on her roof. She looked out her front window and saw liquid burning outside the front of her home. Harris and another Bloods member had thrown Molotov cocktails at the front entrance of the home, while other co-conspirators threw them at the back entrance of the home. Both the front and back of McAbier's home were burned in the attack, but McAbier did not suffer physical injury because not all of the Molotov cocktails caught fire, allowing her to escape the residence.

At trial, a jury convicted Harris of six counts including conspiracy, witness tampering, use of a firearm in a crime of violence, using fire and explosives in a felony, and making firearms. On February 21, 2006, United States District Judge J. Frederick Motz imposed a total sentence of 720 months of incarceration.

**B. Legal Standards**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239–41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1); 18 U.S.C. § 3582(c)(1)(A)(i). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A)(i). Once a motion for compassionate release is properly filed, the Court (1) determines whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; and (2) considers whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Here, the Government concedes that Harris adequately exhausted his administrative remedies as to his Compassionate Release Motion. See ECF 707 at 5 n.2. Thus, this Court turns to whether he has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

The Fourth Circuit has held that "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x

3

229, 230 (4th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant policy statement is U.S.S.G. § 1B1.13, entitled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" (the "Policy Statement"). The Sentencing Commission amended that Policy Statement in recent years, with the amendments taking effect on November 1, 2023.

Before the November, 2023 amendments, the Policy Statement began with the phrase: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment" for certain enumerated reasons. U.S.S.G. § 1B1.13 (2021). In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit determined that the language in the Policy Statement did not encompass motions filed by defendants themselves, meaning that in connection with such motions district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2020)).

The November 1, 2023 amendments changed the beginning of the Policy Statement to read: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment" for certain specified reasons. U.S.S.G. § 1B1.13 (2023) (emphasis added). Thus, the amended Policy Statement is now expressly applicable to defendant-filed motions, like Harris's.

Although the November, 2023 amendments more closely cabin the "extraordinary and compelling reasons" a court may consider, there remains a catchall provision, "Other Reasons," at U.S.S.G. § 1B1.13(b)(5). That provision permits a court to find an extraordinary and compelling reason for relief where a "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through

4

(4)." Paragraphs (1) through (4) address advanced age, serious illness, death in a defendant's family causing a need to care for family members, or defendants who have been victimized in jail.

**C. Analysis**

In this case, Harris argues that a combination of factors amounts to sufficient circumstances to trigger the catchall provision. Those factors are comprised of his "relative youth" at the time of the offense and his difficult upbringing that impacted his decision-making, both at the time of the offense and his decision to proceed to trial, his unique and extraordinary rehabilitation, and the "seismic change in federal sentencing case law" rendering his sentence vastly greater than the typical sentences today for attempted murder or even murder.

This Court concludes that the combination of factors cited by Harris, at this stage, creates an extraordinary and compelling reason to reconsider his sentence under the catchall provision. This Court is primarily persuaded by the length of his 60-year sentence, which well-exceeds the sentences of most of his co-defendants and the median and average sentences presently imposed on defendants for acts of murder. Sentencing data reflects that the average sentence imposed over the past five years for murder in this district is 286 months, with a median of 300 months. *See* United States Sentencing Commission, Interactive Data Analyzer, Average and Median Sentence Length, 2020–2024, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited January 22, 2026). Of course, while Harris and the Bloods intended to commit murder, McAbier survived the firebombing and suffered no physical injury. Harris's sentence, which is more than twice the average or median sentence for murder, is therefore extraordinarily high, even when considering the witness tampering aspect of this case that surely informed the sentencing court's determination.

In combination with the extraordinarily lengthy sentence Harris received, this Court is also permitted to consider what is the most compelling demonstration of rehabilitation this Court has

5

seen. Harris has not simply behaved himself in prison and taken classes offered by the facility, although he has certainly done both of those things. He has also fully and passionately committed himself to becoming a positive societal force, actively taking on roles involving mentorship and teaching. He is the only inmate facilitator for the Victim Impact Class, assisting his fellow inmates in understanding the lasting effects of their criminal acts on victims and communities. He "walked the walk" by writing a letter to the victim in this case, demonstrating his remorse, acceptance of responsibility, and understanding of the damage he caused. He has collected glowing recommendations from prison staff, fellow inmates, and his supervisors in various capacities, some of whom have never written to a court on behalf of others. In sum, this Court is rarely left with such a high degree of confidence that a person has been rehabilitated. This extraordinary rehabilitation in combination with the unusually long sentence well outside the bounds of today's sentencing standards amounts to circumstances similar in gravity to those described in § 1B1.13(b)(1)–(4).

This Court then turns to the 18 U.S.C. § 3553(a) factors in determining whether it should reduce Harris's sentence. *See United States v. Wirsing*, 943 F.3d 175, 183 (4th Cir. 2019); *United States v. Logan*, Cr. No. CCB-10-0203, 2019 WL 3391618 *1 (D. Md. July 26, 2019). Those factors include (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; (3) "the need . . . to protect the public from further crimes of the defendant"; and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The Court may also consider the defendant's conduct since his conviction, which would include his disciplinary record in prison. *See Logan*, 2019 WL 3391618 at *1.

6

The nature and circumstances of Harris's offense were of course extremely serious. He engaged in a conspiracy to firebomb, and actively participated in firebombing, McAbier's house because she was interfering with the Bloods's drug distribution efforts. While McAbier was not injured, the lack of injury was a function of good fortune, as Harris's actions were intended to and could well have caused her death. This Court is persuaded, however, that a twenty-five-year sentence is sufficient, both in terms of just punishment and general deterrence, to address Harris's non-leadership role in this serious but ultimately non-fatal offense.

Harris's history and characteristics weigh heavily in his favor. He details, in his motion, the traumatic childhood experiences that ushered him into a life of drug dealing and criminality.[2] While he was not, in fact, particularly youthful at the time of the charged incident (at age 29), his background had not provided him with tools or guidance to make better life choices. But as described above, since his incarceration in this case more than twenty years ago, Harris has done nearly everything right. He has no disciplinary history, and he has transformed himself into a person whose presence in society promises to bring more benefit than risk. As a result, this Court is able to consider the "need to protect the public" factor (and any consideration of the need for specific deterrence) as factors that also weigh squarely in Harris's favor.

Finally, as addressed above, the sentencing disparity between Harris's sentence, that of many of his co-defendants, and the average and median sentences typically imposed even for more serious offenses resulting in death, counsels strongly in favor of some sentencing reduction, particularly in light of the significant length of time Harris has already served. This Court concludes, in Harris's unique circumstances, that the balancing of the § 3553(a) factors suggests

---

[2] This Court notes that details of Harris's upbringing and history were not presented to Judge Motz at Harris's initial sentencing proceeding.

7

that a total sentence of 300 months is sufficient but not greater than necessary to achieve the purposes of the sentencing statute. That still-hefty sentence recognizes Harris's participation in an extraordinarily violent activity aimed at protecting a drug-distributing gang from intervention by law enforcement and the community, while acknowledging Harris's rehabilitative transformation and the dramatic changes in federal sentencing practices over the past two decades.

    This Court therefore will enter an amended judgment reducing Harris's sentence to a total of 300 months of incarceration as follows: 60 months as to each of Counts One, Two, Three, and Six, to run concurrent with one another, 180 months as to Count Four, to run consecutive to the sentence imposed for Counts One, Two, Three, and Six, and 60 months as to Count Five, to run consecutive to all counts. The variance from the advisory guidelines is justified by Harris's age, his extraordinary rehabilitation, and the total length of the sentence once the consecutive sentences are added, which is sufficient but not greater than necessary to achieve the purposes of the sentencing statute.

Dated: February 6, 2026

                                                                      /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge